E-FILED on     3/22/07

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROBERT NORSE,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF SANTA CRUZ, et al.,<br><br>    Defendants. | No. C 02-01479 RMW<br><br>ORDER RE TRIAL PROCEEDINGS |

**BACKGROUND OF CASE**

This case is set for trial on Monday, March 26, 2007 and involves plaintiff's claims for damages under 42 U.S.C. § 1983 for alleged violations of his civil rights under the First and Fourth Amendments of the Constitution based upon incidents occurring at Santa Cruz City Council meetings on March 12, 2002 and January 14, 2004. The March 12, 2002 incident involves the question of whether the ejection of plaintiff Norse from the council meeting following his Nazi salute protesting Mayor Krohn's administration of the council's decorum rules violated Norse's constitutional rights or was an appropriate action within the "great deal of discretion" a presiding officer has in enforcement of rules for the orderly conduct of meetings. *See White v. City of Norwalk*, 900 F.2d 1421, 1426 (9th Cir. 1990).

The January 14, 2004 incident involves Norse's ejection from a council meeting by Mayor Kennedy for alleged disruptive behavior. Norse's behavior involved allegedly parading with others

1  in front of seated members of the public after being admonished not to do so and carrying on a
2  distracting conversation while the council was attempting to carry on its meeting.  The same legal
3  question that is at issue in the March 12, 2002 incident is also raised in connection with the January
4  14, 2004 incident.  The defendants are the City of Santa Cruz, Christopher Krohn (the mayor on
5  March 12, 2002), Tim Fitmaurice (a city council member), Scott Kennedy (the mayor on January 14,
6  2004), and Loran Baker (a police officer and sergeant-at-arms who removed Norse from the March
7  12, 2002 meeting at the instruction of Krohn).

## QUALIFIED IMMUNITY QUESTIONS AND PROCEDURE FOR RESOLUTION

Each of the individual defendants asserts that he is at least entitled to qualified, if not absolute, immunity. "[B]ecause [t]he entitlement is an *immunity from suit* rather than a mere defense to liability," the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *see Saucier v. Katz*, 533 U.S. 194, 200-01 (2001).  The first inquiry is whether, taking the facts in the light most favorable to plaintiff, do those facts show the official's conduct (here, the acts of the mayors) violated a constitutional right. *Saucier,* 533 U.S. at 201.  If so, the dispositive inquiry is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Id.* at 202; *see Tribble v. Gardner*, 860 F.2d 321 (9th Cir. 1988).  The determination of qualified immunity on facts not genuinely at issue is one of law for the court.  *See Thompson v. Mahre*, 110 F.3d 716, 721 (9th Cir. 1997); *Act Up!/Portland v. Bagley*, 988 F.2d 868 (9th Cir. 1993).

In this case, there are video tapes of the incidents in question and both parties have agreed they are admissible and presumably agree they accurately depict what occurred.  Therefore, the facts appear undisputed.  Since the court is mandated to resolve issues of qualified immunity "at the earliest possible stage of the litigation," the court needs to resolve the qualified immunity issue, if possible, before proceeding with the jury aspect of the trial.  Therefore, on Monday, March 26, 2007 the court will consider the question of whether any of the individual defendants, based upon the facts in the light most favorable to plaintiff, is entitled to qualified immunity.

The parties should be prepared to address the following questions:

1. Are there any facts in dispute that preclude the determination of qualified immunity as a matter of law? If so, what are those facts?

2. If one or both of the mayors violated plaintiff's constitutional rights by ordering his ejection from the council meeting but is nevertheless entitled to qualified immunity, is the City liable for the constitutional violation? Is a mayor in purporting to enforce a city's decorum rules at a council meeting acting as a policy maker for the city?

3. Can a sergeant-at-arms at a council meeting be held liable if he ejects a member of the audience from the meeting at the instruction of presiding officer when the decorum rules require that upon instructions of the presiding officer the sergeant-at-arms has the duty "to eject from the Council Chambers any person in the audience who . . . disrupts the proceedings of the Council," if the presiding officer's instruction was not reasonable based upon the conduct of the member of the audience?

4. In determining whether there has been a disruption of a council meeting by a member of the audience, can the presiding officer consider the reaction of a council member to the action of member of the audience or can he only consider the conduct of the member of the audience and the impact of that conduct on the audience?

The court will resolve the above issues and finalize its rulings on plaintiff's *in limine* motions on Monday, March 26 or Tuesday, March 27. Therefore, jury selection, assuming a jury is needed, will begin on Wednesday, March 28, at 9:00 a.m.

**PLAINTIFF'S *IN LIMINE* MOTIONS**

**Plaintiff's Motion *in Limine* No. 1**

Plaintiff Norse seeks to exclude all evidence, testimony, and argument regarding all incidents involving him at city council meetings other than the meetings on March 12, 2002 and January 14, 2004. Norse argues such evidence is irrelevant to the present suit, which is about whether he caused disruptions at the council meetings on March 12, 2002 and January 14, 2004. Second, Norse contends such evidence would be unduly prejudicial and confuse the jury because it consists of past and subsequent behavior tending to encourage the jury to "dislike plaintiff or hold plaintiff in contempt for such behavior," which detracts from the true issues at hand. Introduction of such

1  evidence would also be a waste of time in that defendants' pretrial statement has indicated there are
2  hundreds of such incidents of purported misconduct at city council meetings, which could cause the
3  trial to go on for weeks.  Third, Norse submits such past and subsequent acts constitute inadmissible
4  character evidence in the form of prior bad acts offered to prove a general intent crime.

5  The court finds that evidence of what occurred at meetings before the two meetings at issue
6  is relevant to the extent it shows prior warnings to Norse about his conduct and shows prior conduct
7  that caused disruption or likely would cause disruption.  In particular, evidence that plaintiff was
8  informed at past meetings that the "Nazi salute" was offensive and was warned not to again make
9  the gesture is relevant to the question of whether his conduct on March 12 was disruptive or likely to
10 cause disruption and whether Mayor Krohn's ejection of Norse was reasonable.  Evidence, however,
11 offered to merely show that the council permitted Norse to proceed with harsh criticism of the city
12 council in the past without incident has little relevance to whether his behavior at the meetings in
13 question was disruptive and its admission could cause the jury to "dislike plaintiff or hold plaintiff in
14 contempt for such behavior," which would detract from the true issues at hand.  Also, conduct
15 subsequent to the January 14, 2004 meeting seems irrelevant.  The court will consider the specific
16 evidence that defendant seeks to admit and rule on the admission of it at the proceedings on March
17 26.

18 **Plaintiff's Motion** *in Limine* **No. 2**

19 Norse moves to exclude evidence, testimony, reference, or argument regarding any of his
20 past criminal convictions on grounds of irrelevance, undue prejudice, inadmissible character
21 evidence or prior act evidence, and inadmissible prior conviction evidence.

22 Defendants oppose, arguing that the evidence is directly relevant to the issue of whether
23 Norse suffered emotional distress as claimed as well as to the measure of damages for emotional
24 distress suffered.  Defendants essentially argue that plaintiff's numerous past arrests and detentions
25 evidence that he is familiar with and desensitized to such processes, which refutes his claim that he
26 suffered severe emotional distress, fear, anxiety, embarrassment, and humiliation with respect to the
27 arrests and detentions on March 12 and January 14.

28 Defendants also argue that the nature of the past offenses show that plaintiff knew his

conduct would likely lead to arrest and incarceration. Defendants submit that such use of the evidence does not constitute inadmissible character evidence.

In *Udemba v. Nicoli*, 237 F.3d 8, 14 (1st Cir. 2001), the district court had allowed defendant to cross-examine plaintiff about a subsequent arrest that had evoked the same sort of newspaper publicity for the limited purpose of assisting the jury in determining the extent of damages suffered for mental anguish and emotional distress. The First Circuit affirmed the district court's conclusion that the evidence was specially relevant to the contested issue of the amount of damages attributable to emotional distress.[1]

The court grants the motion subject to reconsideration depending upon what plaintiff offers at trial on damages. Although the court finds persuasive the argument that such evidence could be relevant for the limited purposes of determining the extent of damages attributable to plaintiff's emotional distress claim, if plaintiff asserts emotional distress, defendants have not presented a sufficient showing of any particular conviction that would support their relevance arguments. Defendants note that they "are in the process of acquiring certified criminal and court records documenting these prior arrests and incarcerations." The basis for defendants' arguments is that Norse testified at deposition to numerous incidents from 1998 through 2002 for which he was arrested, convicted, and incarcerated in Santa Cruz County, Santa Clara County, and Sacramento County. Since plaintiff has suggested he may not offer evidence of emotional distress and since no showing has been made of particular purportedly relevant past convictions, the court at this point excludes such evidence as irrelevant and unduly prejudicial to the plaintiff, subject to reconsideration.

DATED:      3/22/07                           _____
                                              RONALD M. WHYTE
                                              United States District Judge

---

[1] *Halvorsen v. Baird*, 146 F.3d 680, 687 (9th Cir. 1998), cited by defendants for the same proposition, is not on point.

**THIS SHALL CERTIFY THAT NOTICE OF THIS ORDER WAS PROVIDED TO:**

**Counsel for Plaintiff:**

David J. Beauvais    davebeau@pacbell.net
Kate Wells    lioness@got.net

**Counsel for Defendants:**

George J. Kovacevich    admin@abc-law.com


Date:    3/22/07                                    SPT
                                           Chambers of Judge Whyte

ORDER RE TRIAL PROCEEDINGS
C 02-01479 RMW                          6