**E-filed on**: _____3/28/07_____

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROBERT NORSE,<br><br>        Plaintiff,<br><br>        v.<br><br>CITY OF SANTA CRUZ, et al.,<br><br>        Defendants. | No. C 02-01479 RMW<br><br>ORDER DISMISSING PLAINTIFF'S COMPLAINT UPON FINDING OF QUALIFIED IMMUNITY OF DEFENDANTS |

       This matter came on regularly for trial on March 26, 2007. Pursuant to the court's pretrial order dated March 22, 2007, the court set the first day of trial to determine whether the issue of defendants' entitlement to qualified immunity could be determined based upon undisputed facts. After considering the undisputed facts and hearing the arguments of counsel, the court finds that the individual defendants are entitled to qualified immunity and that there is no basis for independent liability of the City. Therefore, the court will enter judgment in favor of defendants.

## I. UNDISPUTED FACTS

       Plaintiff Robert Norse claims damages under 42 U.S.C. § 1983 for alleged violations of his civil rights under the First and Fourth Amendments of the Constitution based upon incidents occurring at Santa Cruz City Council meetings on March 12, 2002 and January 13, 2004. The parties agree that the council meetings were videotaped, that the videotapes are admissible and

depict what occurred at the meetings. The parties also agree as to the content of the City's rules for Decorum in Council Meetings and Norse's knowledge of them.

**A.  March 12, 2002 Incident**

On March 12, 2002 Norse was ejected from the council meeting following his Nazi salute protesting Mayor Christopher Krohn's refusal to allow an individual to speak after the "oral communication" session, a period of time when members of the public are allowed to address the council, had ended. Immediately prior to Norse's Nazi salute, Mayor Krohn had instructed a boisterous, somewhat threatening individual objecting to the end of open communications to leave and had instructed the individual who was insisting that she be allowed to speak after the end of oral communications to step away from the microphone and be seated. After being instructed twice to step away from the microphone and warned that, if she did not, she would have to leave, she stepped away and walked over to Norse who then gave the Nazi salute. Before the salute, Mayor Krohn had resumed reading some announcements and thus did not see the salute. Council member Tim Fitzmaurice then interrupted Mayor Krohn, advised him that the Nazi salute had been given, stated that he felt the salute was against the "dignity of the body" and requested that Krohn instruct Norse to leave the chambers. Norse started to challenge Fitzmaurice's statements and Mayor Krohn immediately instructed Norse to "please leave the chambers." Norse, who was then standing by the entrance to the chambers, refused and took a seat in the chambers. A recess was taken and Loran Baker, a police officer acting as the sergeant-at-arms for the council, asked Norse if he was going to voluntarily leave and Norse said he would not. Baker then placed Norse under arrest without incident except for Norse's calling attention to the fact he was being arrested.

The videotape of a June 26, 2001 council meeting shows that then Mayor Fitzmaurice advised Norse that any future Nazi salute would be considered "indecorous behavior." The videotape of a July 10, 2001 meeting reflects that council member Keith Sugar asked Norse not to use Nazi gestures.

**B.  January 13, 2004 Incident**

On January 13, 2004 Norse was ejected from the council meeting by Mayor Scott Kennedy following certain conduct by Norse. The city council was discussing a proposed housing

1  development in an industrial area of the city.  Certain individuals were parading between the public
2  seating area and the dias where the council members were seated.  Norse was one of those in the
3  parade but he was not carrying a sign.  Mayor Scott Kennedy interrupted the proceedings, asked that
4  people not block the view of the members of the audience by walking between the public seating
5  area and the dias and that this was a warning that further disruption could lead to expulsion.  Later,
6  during comments by council member Ed Porter, Mayor Kennedy interrupted Porter and asked
7  Norse, who, according to Norse, was whispering to another individual, to "please take your
8  conversation outside."  Mayor Kennedy also advised Norse that this was his second warning.  Norse
9  then asked what was his first warning and Kennedy replied that this was his third warning and asked
10 him to  leave the chamber.  Norse apparently walked outside and then Porter resumed his discussion
11 after pausing to regain his train of thought.  After discussion on the project concluded, Mayor
12 Kennedy discussed the decorum rules and listed Norse, who had returned to the chambers, as one of
13 several that had been warned and asked him again to leave as he had been asked one-half hour
14 earlier.  Norse insisted to no avail that a council vote be taken on his ouster.[1]  Norse then refused to
15 leave, a recess was taken and Norse was arrested after he maintained his refusal to leave.

**C.  Rules for Decorum in Council Meetings**

The City of Santa Cruz has written procedural rules for Decorum in Council Meetings.  The rules provide that:

> While the Council is in session, all persons shall preserve order and decorum.  Any person making personal, impertinent, or slanderous remarks, or becoming boisterous shall be barred by the presiding officer from further attendance at said meeting unless permission for continued attendance is granted by a majority vote of the Council.

The rules also require all speakers to "avoid[] all indecorous language and references to personalities and abid[e] by the following rules of civil debate.

1. We may disagree, but we will be respectful of one another
2. All comments will be directed to the issue at hand
3. Personal attacks should be avoided"

---

[1] The Decorum Rules do allow a majority of the council to give permission for continued attendance despite the decision of the presiding officer to bar an individual.  However, the rules do not provide for the individual to call for a vote.

Finally, the rules provide that the chief of police, or representative, shall act as ex-officio sergeant-at-arms of the Council and "shall carry out all orders and instructions of the presiding officer for the purpose of maintaining order and decorum in the Council Chambers."

> Upon instructions of the presiding officer it shall be the duty of the sergeant-at-arms or any police officer present to eject from the Council Chambers any person in the audience who uses boisterous or profane language, or language tending to bring the Council or any Councilmember into contempt, or any person who interrupts and refuses to keep quiet or take a seat when ordered to do so by the presiding officer or otherwise disrupts the proceedings of the Council.

Norse, who frequently attends and speaks at council meetings, was familiar with the decorum rules at the time of the incidents.

## II. NATURE OF CLAIM AND QUALIFIED IMMUNITY

Plaintiff filed this lawsuit under 42 U.S.C. § 1983 seeking to recover compensatory and punitive damages, as well as injunctive relief based upon the March 12, 2002 incident. Plaintiff originally challenged the constitutionality of Santa Cruz's written rules regarding decorum during city council meetings, both on their face and as applied. However, the court of appeals, although agreeing with plaintiff that the court should not have granted defendants' motion to dismiss on the pleadings, construed the decorum rules to proscribe only disruptive conduct and thus held that the rules are facially valid. *Norse v. City of Santa Cruz*, 118 Fed. Appx. 177, 178 (9th Cir. 2004). Norse, therefore, limits his claim to one that his constitutional rights were violated by the manner in which the decorum rules were applied to him. After the appellate court decision, Norse amended his complaint to assert that his constitutional rights were also violated by the way the rules were applied to him at the council meeting on January 13, 2004.

Defendants contend that the rules were appropriately applied to Norse and, in any event, the individual defendants are immune from suit because it would not have been clear to a reasonable officer in any of the defendants' positions that the action taken was unlawful in light of the situation that the defendant confronted. *See Saucier v. Katz*, 533 U.S. 194, 202 (2001); *Trevino v. Gates*, 99 F.3d 911, 916 (9th Cir. 1996).

ORDER DISMISSING PLAINTIFF'S COMPLAINT UPON FINDING OF QUALIFIED IMMUNITY OF DEFENDANTS
C-02-01479 RMW
4

# III.  ANALYSIS

## A.  Qualified Immunity Should Be Resolved As Early As Possible

"[B]ecause [t]he entitlement is an *immunity from suit* rather than a mere defense to liability," the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *see Saucier*, 533 U.S. at 200-01.  Qualified immunity is effectively lost if a case is allowed to go to trial where the defendant is entitled to qualified immunity.  *Saucier*, 533 U.S. at 201.

## B.  Qualified Immunity Analysis

The determination of whether qualified immunity is applicable involves a two step inquiry.  The first question is whether the undisputed facts show that the action of the defendant violated a constitutional right.  In the present case, therefore, the issue is whether Krohn, Fitzmaurice, Baker or Kennedy violated a constitutional right protecting Norse.  *Id.* at 201.  If so, the next question is whether that right was clearly established in the specific context of the case.  *Id.*  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.

The determination of qualified immunity on facts not genuinely at issue is one of law for the court.  *See Thompson v. Mahre*, 110 F.3d 716, 721 (9th Cir. 1997); *Act Up!/Portland v. Bagley*, 988 F.2d 868 (9th Cir. 1993).

### 1.  The March 12, 2002 Meeting

#### a.  Norse's Constitutional Rights Were Not Violated When He Was Removed from the Council Meeting Following His Nazi Salute

The Ninth Circuit has upheld decorum rules similar to those adopted in Santa Cruz against a facial constitutional challenge based upon an interpretation of the rules that requires an individual who engages in proscribed conduct be acting in a way that actually disturbs or impedes the meeting. *White v. City of Norwalk*, 900 F.2d 1421, 1424 (9th Cir. 1990); *Kindt v. Santa Monica Rent Control Board*, 67 F.3d 266 (9th Cir. 1995).  As noted above, the Ninth Circuit upheld the Santa Cruz rules against a facial challenge in this case.  *Norse, supra*.  Rules governing public participation at council

1    meetings will be upheld as long as the rules are reasonable and viewpoint neutral. *Kindt*, 67 F.3d at
2    270-71.  Rules such as those involved here seek to further the government's legitimate interest in
3    conducting orderly and efficient meetings of the city council by prohibiting disruptive comments
4    and behavior. *See White*, 900 F.2d at 1421.  The presiding officer's enforcement of the rules
5    "involves a great deal of discretion." *Id.* at 1426.  Therefore, with respect to the March 12, 2002
6    meeting, the first question in the two step *Saucier* test for qualified immunity is whether the ejection
7    of Norse was objectively reasonable because his conduct was disruptive (impeded the council from
8    accomplishing its business in a reasonably efficient manner) or was based upon the mere content of
9    his speech.

10   The salute occurred after the oral communication portion of the meeting had concluded.
11   After dealing with two individuals who were clearly disruptive, Mayor Krohn resumed the council's
12   business by reading some announcements.  Since he was reading, he did not notice Norse's gesture
13   but within seconds council member Fitzmaurice called his attention to the fact that Norse had made
14   a Nazi salute.  Fitzmaurice's concern, at least as expressed, seems to have been with the content of
15   the expression ("below the dignity of the body") rather than with any interference with the orderly
16   conduct of the meeting.  Krohn, however, as the presiding officer in charge of running the meeting,
17   was suddenly faced with a meeting that had been interrupted by an offended council member.
18   Krohn had just finished dealing with two disruptive members of the public, at least one of whom
19   Norse was supporting with his salute.  Krohn also knew that two council members in the previous
20   months had expressed to Norse their abhorrence of his Nazi gestures which reasonably suggests that
21   Norse intended his salute at the March 12, 2002 meeting to be disruptive.  Further, Norse had begun
22   to verbally challenge Fitzmaurice's comments.  Under these circumstances, the court finds that
23   Krohn's action in ejecting Norse from the chambers was a reasonable means within his "great deal of
24   discretion" controlling the conduct of the meeting and was not merely action taken based upon the
25   content of Norse's speech.  Therefore, Norse's First Amendment rights were not violated.

26   **b.  A Reasonable Mayor Would Not Have Believed that the Ejection of Norse Was Unlawful in the Situation He Confronted**
27
28   Assuming *arguendo* that Norse's Nazi salute was not disruptive, the next question is whether

the right to express oneself by a Nazi salute was clearly established in the specific context of the case. *Id.* The dispositive inquiry in determining whether a right is clearly established is whether it would have been clear to a reasonable mayor in the situation he confronted that his act of ejecting Norse for making a Nazi salute was a violation of his First Amendment rights. *Id.* at 202. The law is clearly established that an individual may be ejected from a council meeting for disruptive behavior, in other words behavior that interferes with a council's accomplishing its business. However, the determination as to what constitutes disruptive behavior in the situation confronted by Krohn is not so clear. The discussion in *White* was limited to the question of whether the ordinance was unconstitutional on its face. It did not deal with the particular conduct that led to the plaintiffs' ejections. The court, however, observed:

> A more fundamental flaw in plaintiffs' position is that their first amendment arguments do not take account of the nature of the process that this ordinance is designed to govern. We are dealing not with words uttered on the street to anyone who chooses or chances to listen; we are dealing with speech that is addressed to that Council. Principles that apply to random discourse may not be transferred without adjustment to this more structured situation.

*White*, 900 F.2d at 1425.

In *Kindt*, the court affirmed the dismissal of a § 1983 action in which plaintiff claimed that the rent control board violated his First Amendment rights when it ejected him from public board meetings and by discriminating between speakers who supported the board's views and speakers who opposed them. The court gave guidance on the type of limitation of speech allowed. "It seems to us that the highly structured nature of city council and city board meetings makes them fit more neatly into the nonpublic niche . . . . The fact remains that limitations on speech at those meetings must be reasonable and viewpoint neutral, but that is all they need to be." *Kindt*, 67 F.3d at 270-71. However, the *Kindt* court provides little help on what conduct can be considered disruptive and therefore justifies ejection. Kindt's conduct was described as abandoning "all sense of decorum." *Id.* at 273.[2]

---

[2] On one occasion Kindt was asked to move when he and others were disturbing another member of the public addressing the board. On that occasion, a board member stomped out because he thought Kindt and others should have been ejected. On another occasion Kindt and a cohort were ejected after a board member thought the cohort had made an obscene gesture toward him. *Kindt*, 67 F.3d at 268-69.

ORDER DISMISSING PLAINTIFF'S COMPLAINT UPON FINDING OF QUALIFIED IMMUNITY OF DEFENDANTS
C-02-01479 RMW

1    The court concludes based upon the undisputed facts that it would not have been clear to a
2 reasonable mayor in Mayor Krohn's position that his ejection of Norse was unlawful in the situation
3 he confronted. Therefore, even if Norse's First Amendments rights were violated, Krohn is entitled
4 to qualified immunity.

5 **c. Council Member Fitzmaurice Did Not Eject Norse**

6    Although council member Fitzmaurice requested Mayor Krohn remove Norse from the
7 meeting, only Krohn had that power and, in fact, made the order of ejection. Therefore, regardless
8 of the validity of Fitzmaurice's stated reason for his request, he cannot be held responsible for
9 Norse's removal. Further, even if Fitzmaurice were responsible for Norse's removal and was
10 improperly motivated, he would nevertheless be entitled to qualified immunity. Evidence
11 concerning the defendant's subjective intent is simply irrelevant to the question of qualified
12 immunity. *See, e.g., Morgan v. Woessner*, 997 F.2d 1244, 1260 (9th Cir. 1993).

13 **d. Probable Cause for Arrest**

14    Defendants contend that there was probable cause to arrest Norse. The order ejecting him
15 was a lawful order and his refusal to comply with the lawful order established probable cause to
16 arrest him. The complaint alleges that Sergeant Baker, at the Mayor's instruction, informed plaintiff
17 that he would have to leave or he would be arrested. Plaintiff refused to leave. Sergeant Baker then
18 placed plaintiff under arrest. Plaintiff contends that the ejection order was unlawful because he had
19 not disrupted the meeting. As discussed above, however, the meeting was in fact disrupted. Thus,
20 the order to remove plaintiff was lawful. Plaintiff's refusal to leave the chambers provided probable
21 cause for his arrest. Thus, there was no constitutional violation by Sergeant Baker.

22    In addition, Sergeant Baker has qualified immunity. The decorum rules provide that the
23 sergeant-at-arms of the Council "shall carry out all orders and instructions of the presiding officer
24 . . . ." There was no clearly established law pursuant to which Sergeant Baker should have known
25 that the Mayor's order was unlawful. The City's decorum rules and their application were not so
26 obviously unconstitutional that a reasonable police officer would have refused to enforce Mayor
27 Krohn's direction to remove Norse from the council meeting. *See Grossman v. City of Portland*, 33
28 F.3d 1200, 1209-10 (9th Cir. 1994). A reasonable officer in Sergeant Baker's position would not

have believed that arresting plaintiff for refusing to comply with an apparently lawful order to depart from the council meeting violated any clearly established right.  Sergeant Baker has qualified immunity for his actions in arresting plaintiff.

### 2. The January 13, 2004 Meeting

#### a. Norse's Constitutional Rights Were Not Violated When He Was Removed from the Council Meeting For His Disruptive Behavior

Plaintiff argues that there is a question of fact as to whether Norse's conduct at the January 13, 2004 meeting was disruptive and that individuals who were at the meeting would testify that Norse was not disruptive and that his conversations were no louder than those engaged in by others. The court accepts for the purposes of its analysis that plaintiff could offer such testimony—a qualified immunity analysis must be based upon undisputed facts or facts viewed in the light most favorable to plaintiff.  However, the videotape of the January 13, 2004 meeting shows plaintiff participating in the parade of individuals walking between the public seating area and the dias where the council members were seated, talking into a handheld recorder as the picketers entered the council chambers, initiating conversation with an individual (possibly a city staff person) while another individual was making a presentation to the council, demanding to know what his first warning was when the mayor advised him of his second warning and insisting that a council vote be taken concerning Mayor Kennedy's decision to eject him.  Even accepting the testimony that plaintiff says he could offer, the undisputed evidence shown by the videotape supports without legitimate dispute that Norse's ejection was within the "great deal of discretion" a presiding officer has in enforcement of decorum rules.  Norse's participation in the parade of protesters was clearly disruptive.  The videotape shows that he was talking into a recorder during the meeting, that he initiated conversation with someone when another was making a presentation to the council and that he engaged in verbal challenges to Mayor Kennedy's warnings to him.  The fact that some individuals who were at the meeting did not consider him disruptive does not negate the fact that Mayor Kennedy reasonably viewed his conduct as disruptive.  The court finds that the undisputed evidence, with consideration of the additional evidence plaintiff says he could present, shows no violation of Norse's constitutional rights.  That finding ends the inquiry under *Saucier* and Mayor

ORDER DISMISSING PLAINTIFF'S COMPLAINT UPON FINDING OF QUALIFIED IMMUNITY OF DEFENDANTS
C-02-01479 RMW

Kennedy is entitled to qualified immunity from Norse's claim.

### b.  A Reasonable Mayor Would Not Have Believed that the Ejection of Norse Was Unlawful in the Situation He Confronted

Since the evidence establishes without question that Norse's constitutional rights were not violated by his ejection from the January 13, 2004 meeting, a reasonable presiding officer in Mayor Kennedy's position would not have believed that ejecting Norse from the meeting was unlawful. Kennedy is entitled to qualified immunity.

**C.  No Independent Basis for Liability of the City**

Since the undisputed facts show no violation of Norse's constitutional rights, there is no basis for liability of the City.

## IV.  ENTRY OF JUDGMENT

Since the individual defendants are entitled to qualified immunity and there is no basis for independent liability of the City since no constitutional violation occurred, judgment shall be entered in favor of all defendants and plaintiff is entitled to no relief by way of his complaint.

DATED: _____3/28/07_____

/s/ Ronald M. Whyte
RONALD M. WHYTE
United States District Judge

**THIS SHALL CERTIFY THAT NOTICE OF THIS ORDER WAS PROVIDED TO:**

**Counsel for Plaintiff:**

David J. Beauvais     davebeau@pacbell.net

Kate Wells     lioness@got.net

**Counsel for Defendants:**

George J. Kovacevich     admin@abc-law.com

Date:      3/28/07                                SPT
                                       Chambers of Judge Whyte

ORDER DISMISSING PLAINTIFF'S COMPLAINT UPON FINDING OF QUALIFIED IMMUNITY OF DEFENDANTS
C-02-01479 RMW

11