UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROBERT NORSE,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>CITY OF SANTA CRUZ, et al.,<br><br>　　　　　Defendants. | Case No. C-02-01479 RMW<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR A NEW TRIAL**<br><br>[Re Docket No. 210] |

Plaintiff Robert Norse moves for a new trial on the basis that the jury's verdict was contrary to the clear weight of evidence. The trial concerned Norse's claims that his constitutional rights were violated when he was ordered to leave two city council meetings and then arrested. For these removals to have been lawful, Norse must have caused a disruption at the council meetings. Norse argues that the clear weight of evidence does not support a finding that he caused disruptions and thus in removing him the defendants violated his First and Fourth Amendment rights. After reviewing the evidence, the court concludes that the jury's verdict was not against the clear weight of evidence and thus DENIES Norse's motion. Also, if it is assumed that Norse's constitutional rights were violated, the individual defendants are entitled to qualified immunity.

# I. BACKGROUND

Norse, a vociferous advocate for the homeless and a frequent attendee and speaker at City of Santa Cruz City Council meetings, brought claims against the City of Santa Cruz, former Mayors Christopher Krohn and Scott Kennedy (now deceased and dropped from the case) and former Councilmember Tim Fitzmaurice (collectively "Santa Cruz").  Norse asserts that defendants violated his First and Fourth Amendment rights during incidents at Santa Cruz City Council meetings on March 12, 2002 and January 13, 2004.

At the March 12, 2002 meeting, Mayor Krohn closed the public comment period after thirty minutes.  A boisterous individual then made some sort of protesting comments and Mayor Krohn asked him to leave.  As the man left, he apparently yelled some sort of threat.  An additional speaker then attempted to speak and Mayor Krohn asked her to sit down without speaking because the public comment period had ended.  Although she protested not having her chance to speak, she eventually gave up after the mayor said that she would have to leave the meeting if she did not step away from the microphone.  As she returned to her seat, Norse gave the council a "Nazi salute" in protest of the mayor's refusal to hear from the final speaker.  Krohn did not notice the salute when it occurred and kept reading from his notes.  After a few moments, Councilmember Fitzmaurice interrupted Krohn for a point of order, was recognized, and notified the mayor of Norse's action.  As Fitzmaurice was trying to make his point of order, Norse interrupted him multiple times.  Krohn then asked Norse to leave.  When he refused to leave, Krohn called a recess during which a police officer arrested Norse who continued to refuse to leave the council chambers.

At the January 13, 2004 meeting, Norse entered the meeting with a group of protesters carrying signs.  Although Norse was not carrying a sign, he joined the other protesters in marching around the city council chamber.  Mayor Kennedy asked the protesters to stop marching so that they would not block the views of the other members of the public and told them that this was their first warning. Sometime later during the meeting, Kennedy told Norse that he was giving him his second warning for whispering during the meeting.  Norse challenged this asking what his first warning was.  The Mayor then said that was his third warning and asked him to leave.  Norse left, but later returned to participate in oral communications.  When Norse returned to the meeting, the Mayor

reminded everyone of the rules of decorum that govern the council meetings and then asked Norse to leave after reminding him of his previous warnings and the previous request for him to leave. When Norse refused, the Mayor recessed the meeting and Norse was arrested.

Norse filed a complaint against the City of Santa Cruz, Krohn, Fitzmaurice and Kennedy for violations of his First and Fourth Amendment rights. On November 7, 2012, a jury found for the defendants. The jury found no First or Fourth Amendment violations by any of the defendants at either council meeting. Norse now moves for a new trial arguing that the jury's verdict was contrary to the clear weight of the evidence.

## II. ANALYSIS

Norse argues for a new trial under Rule 59. Rule 59(a) does not specify the grounds on which a new trial may be granted. Rather, it provides that a new trial may be granted "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed.R.Civ.P. 59(a)(1)(a). Courts have traditionally granted new trials where "the verdict is against the weight of the evidence." *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940). In evaluating this standard, the court has a duty to weigh the evidence, "and to set aside the verdict of the jury, even though supported by substantial evidence, where, in [the court's] conscientious opinion, the verdict is contrary to the clear weight of the evidence." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (modification in original) (quoting *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir.1990)). A motion for new trial, however, should not be granted "simply because the court would have arrived at a different verdict." *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002).

### A. The March 12, 2002 Incident

Norse argues that his Nazi salute did not disturb the March 12, 2002 meeting and thus defendants did not have probable cause to arrest him. Although he provides little exposition, Norse extensively cites to trial record evidence that supports his argument that he did not disturb the meeting. Pl.'s Br. 1-5. To rebut this evidence, Santa Cruz directs the court to its closing arguments. The crux of the parties' dispute is whether Norse's actions were disruptive. Norse argues that he was ordered to leave the meeting for his short, silent Nazi salute. Santa Cruz argues that the disruption

ORDER DENYING NEW TRIAL
Case No. C-02-01479 -RMW
SW
- 3 -

was not only the Nazi salute, but also his approaching the podium and arguing with Fitzmaurice while Fitzmaurice was trying to make his point of order.

The court agrees with Norse that the Nazi salute alone did not cause a disruption and that a conclusion that it did would be contrary to the clear weight of evidence. Other than Fitzmaurice, no one seemed to notice the salute and the salute itself did not disturb Krohn who was looking at his notes until Fitzmaurice raised his point of order. However, Norse was not ordered to leave the meeting until he interrupted Fitzmaurice multiple times while Fitzmaurice was trying to make his point of order. This was a more serious interruption. The mayor had recognized Fitzmaurice and thus Fitzmaurice was the only person who was supposed to be speaking. Norse was speaking out of turn and his interruptions required Fitzmaurice to repeat himself. These interruptions combined with the Nazi salute provide enough evidence supporting the jury's verdict that the court cannot find the verdict was contrary to the clear weight of evidence.

### B.  The January 13, 2004 Incident

The jury's finding of no liability in favor of the defendants for the January 13, 2004 incident was not contrary to the clear weight of evidence. Norse engaged in a protest staged during a city council meeting, which involved walking between the audience and the council members. This conduct alone was disruptive. Although the parties disagree about how disruptive Norse's whispering and subsequent challenge to the mayor's warnings were, a jury could reasonably have found he caused a disruption. Given that his actions interrupted normal council business, the court finds that the jury's verdict was not contrary to the clear weight of the evidence.

### C.  Other Arguments for New Trial

Norse makes a number of other arguments about First Amendment standards, probable cause, municipal liability, and the meaning of "committed in the presence" under California Penal Code section 837. The court does not find that any of these arguments support a new trial.

### III.  QUALIFIED IMMUNITY

Defendants made a motion for judgment as a matter of law at the close of Norse's case on the basis that the mayors' decisions to order Norse to leave the meetings were reasonable and, therefore, the mayors are entitled to qualified immunity. The court deferred ruling on the motion

pending the jury's verdict. Since the jury found in favor of the defendants, the motion was mooted and not ruled upon. Now, however, the defendants have renewed their motion in their opposition to plaintiff's motion for new trial presumably to support a defense verdict even if the court were to determine that plaintiff's constitutional rights were violated.

If Krohn or Kennedy violated Norse's constitutional rights by expelling him from a council meeting, Santa Cruz submits that they are nevertheless entitled to the defense of qualified immunity because their action resulted from a reasonable mistake as to what the law allowed under the circumstances presented. *See Saucier v. Katz*, 533 U.S. 194, 205 (2001). Defendants submit that a reasonable mayor could have believed that his conduct was within the guidance of *White v. City of Norwalk*, 900 F.2d 1421 (9th Cir. 1990) and *Kindt v. Santa Monica Rent Control Bd.*, 67 F.3d 266 (9th Cir. 1995), the two leading cases at the time dealing with conduct at city council or board meetings. *White* points out

> [T]he nature of a Council meeting means that a speaker can become "disruptive" in ways that would not meet the test of actual breach of the peace, or of "fighting words" likely to provoke immediate combat. A speaker may disrupt a Council meeting by speaking too long, by being unduly repetitious, or by extended discussion of irrelevancies. The meeting is disrupted because the Council is prevented from accomplishing its business in a reasonably efficient manner. Indeed, such conduct may interfere with the rights of other speakers.

*White*, 900 F.2d at 1425-26 (internal citations omitted). As *White* also points out, "[t]he role of a moderator involves a great deal of discretion." *Id*. at 1426. *Kindt* affirms that the entity has a great deal of discretion. *Kindt*, 67 F.3d at 272.

The court concludes that if Krohn or Kennedy violated Norse's constitution rights by expelling him, their mistake was reasonable and they are entitled to qualified immunity. At the March 12, 2002 meeting, Mayor Krohn had just dealt with two citizens who objected to his cut-off of the public comment period, he had an upset councilmember who was raising an issue concerning Norse's "Nazi salute" and he had Norse coming to the podium to argue with the point of order the councilmember was raising. Under these circumstances, a reasonable mayor could have concluded that it was within his authority to expel Norse.

At the January 13, 2004 meeting, Mayor Kennedy was dealing with protesters, including Norse, who were walking around a meeting and impairing the audience's view of the council. The parading around clearly could have been viewed by a reasonable mayor as disruptive. A reasonable mayor could also view Norse's challenge to Mayor Kennedy's instruction that Norse take his conversation outside and his questioning of Kennedy's warnings as further disruption.

## IV.  ORDER

The court DENIES Norse's motion for a new trial.

Dated: June 13, 2013

*Ronald M. Whyte*

Ronald M. Whyte

United States District Judge